We'll now move to United States v. Saleh, the 2953. There are two of those. My understanding is that counsel for both are going to come up just so we can avoid the wear and tear of changing lineups. But Mr. Bacharach, you're doing both, right? I am, Your Honor. Okay. So we're going to start with 2953, and that's Mr. Pravda for the government. I just have one minute. Justin, I'll do post one. Yeah. Thank you. Thank you. All right. So, Mr. Bacharach, you've got three minutes for rebuttal. That's ten total, so you've got seven out of the gate. You may proceed. Thank you very much, Your Honor. And to start, good morning, Judge Wesley. Good morning, Judge Sullivan. Good morning. Good morning, Judge Bianco. It is always a pleasure to be before all of you again. Let me begin with where the parties agree. That's the easy part. The parties agree that if the defendant, if the appellant, Mr. Saleh, wins his other appeal, what we're arguing second, the parties absolutely agree that in this case, reversal becomes required. There's no dispute with that at all because if Mr. Saleh wins his other case, his criminal history category changes. And that directly impacts his sentencing guidelines, and therefore, a reversal for resentencing in the assault case comes immediately, must follow. I know the numbers, this case is number 2953, the other is 2955. The only reason why this case is first in the docket is because the notice of appeal was filed first, but the case actually comes second, chronologically speaking. No, we thought about switching the order, but it doesn't really matter. We understand the point. I think another thing that the parties can all agree, and I think the court as well can agree, is that a sentence of 38 years, which is what the sentence is when you take the two cases combined, is an extremely long period of time for any defendant. It is not an easy time. No matter how severe the offense, that is serious punishment. Well, no one would disagree with that, but I'm not sure why that really matters. Well, it matters, Your Honor, here, because Mr. Saleh received a sentence of 38 years combined. Thirty in the material support case, which we agree, we're not appealing that, and we agree that was reasonable based upon the guideline analysis. And eight years here, but it was entirely within the court's discretion to sentence Mr. Saleh concurrently, or partially concurrently, as opposed to fully consecutively. But we would have to find that it was shocking under a substantive reasonable standard for the court to do that, even though this involved conduct in the jail. So even if it's thirty years, twenty-five years, thirty-five years, you have someone who has a weapon in the jail, is attempting to, and did use it on an officer, and you're suggesting that if a district court decides, you know what, for deterrent, and he has a hundred infractions, which is . . . Okay. He had nearly too much. Unheard of. I know you can tell me another case where someone has had a hundred disciplinary fractions in the jail, including other acts of violence. You want us to hold that it is abusive discretion. It's shocking for a district court to add eight years to deter him and to protect correctional officers in jail from this type of conduct. It's completely concurrent. It's basically a freebie, right? In terms of deterrence, there's no deterrence if you make it concurrent, right? He would say, I've got no additional time. I can do this again. I'm going to get no additional time. Your Honor, every case is individual. Second Circuit case, Regas, as Your Honor knows, yes, it is a manifest injustice. It is a shock to the conscious standard, obviously, but each case is individual. What I'm suggesting to you is, in my view, this is the worst possible facts for your client, because it involves conduct in the jail that happened after the material support conduct, and in light of a hundred disciplinary infractions where he's involved in all sorts of problematic and violent behavior in the jail. For us to find this is the case that we're going to say you can't impose consecutive time to me would be shocking. Your Honor, you have to take, respectfully, Your Honor, you have to take even those disciplinary infractions, which, by the way, there were nearly 200. I'll concede that. Shockingly, a shocking amount. But you have to take them in context. Why are they occurring? The court has taken, the government, not the government, excuse me, the Bureau of Prisons has taken an individual who has a paranoid schizophrenic with depression, and they put him in the shoe. Now, they initially put him in the shoe not for violent conduct. They put his very first infraction back in 2015 was for this scrawny little guy comes into the jail, and someone says, I need your PIN number to make a phone call. So he lets the person use his PIN number, because he's just trying to survive in jail, and he gets sent to the shoe for 20 days. Now, he's got schizophrenia, he's got depression, and he's now in solitary confinement in the shoe, and he starts to act out. But the district court considered all this, right? I'm sorry? These arguments that you're making now were not, the district court was not oblivious to this. No, that's absolutely true, Your Honor. So you're really saying that the district court didn't weigh those facts appropriately? That's correct. I'm saying that the district court didn't put sufficient weight on his mental health issues when considering the 30553A factors, and the failure to do so was an abuse of discretion, particularly when you compare this case to what defendants in worse cases get, at least for a combined sentence. Let me go back to that point, though. The district court doesn't control where the Bureau of Prisons put him or why he ended up in the state of mind that he's in. The district court is confronted with a situation where, for whatever reason, and it may be partially a mental health reason, he's a danger in the jail, right? And that's, yes, he's a danger in the jail. For the district court to say, well, this all happened because they put him in the shoe, and they shouldn't have put him in the shoe, I'm going to give him concurrent time, doesn't protect anybody. Your Honor, he's being protected by the disciplinary segregation the BOP is putting in place. I mean, he's still serving disciplinary segregation for the conduct, and I don't know if he'll ever get out of the shoe. He's now been moved to ADX, so that's totally self-serving. But the judge did seem to be aware of that and the difficulties at the MDC, because he, at the end of the sentence, didn't he discuss that? Or, I mean, he was, in fact, he gave the government a pretty hard time about it, didn't he? Your Honor, he did discuss it, and he was aware of it, but he didn't consider it. Appellant submits, they didn't submit it, didn't consider it in a reasonable fashion, in the sense that he's saying, okay, as Your Honor is saying, as Judge Bianco is saying, well, this is the worst crime possible in that it happened in a jail. Well, it's an assault, it's not a murder, so it's not the worst crime possible. It is in worse circumstances possible. He stabbed a correctional officer. I mean, it may well be that he was being held, and the fact that he was being held in the shoe, some people would find that to be disproportionate or cruel and inhuman. But the fact is, is that he stabbed a correctional officer. He did cut, cut, cut. I guarantee you, if you were offered the chance to be cut or not be cut, you would say, don't cut me. Absolutely true. It offends me a bit when I find it to be diminished, because the brief diminishes it a little bit. I think the crime- It wasn't so bad, he walked away. I'm sorry. He cut him. Well, Your Honor, when looking at the severity of the sentence and whether or not- A correctional officer shouldn't have to worry about when he reaches into someone's cell as to whether someone's going to assault him with a shiv. I agree with that. I completely agree with that. Would you agree with that? Absolutely. And to be honest, we all know Judge- we all know Officer Cook, and Officer Cook is not someone that you would expect this to happen to. I agree with you, Your Honor. But when considering whether or not the sentence- when considering whether or not to impose a consecutive recurrent sentence, one of the questions the court has to consider is what- will the total sentence be proportional or not? We have defendants who routinely get 20 or 25-year sentences for killing people, for doing- and with knives. Your Honor, if I could use one brief example. If Your Honor remembers many, many years ago, we had a defendant, his name was Luis Ruiz. He was- the MS-13 members, they called him Chucky. The reason they called him Chucky was because he looked like a Chucky doll and he liked to stab people with a knife. He received 23 years for two murders. Now, a person like that is just one example of many examples of defendants who commit murder and get 20, 25, maybe 30 years. You have any case ever- And here- In the history of the United States where someone has committed a crime while incarcerated and a judge imposed consecutive time and was found to be substantively unreasonable to impose consecutive time for conduct that occurred. I wasn't suggesting it was the most serious conduct you could do in a jail. Obviously you could. My point was that these facts were the worst facts for suggesting that it would be an abuse of discretion to make the crime consecutive. And I don't think you have such a case anywhere, ever. I think Mr. Soleil's response to that would be, Your Honor, that in a week or two if that question is asked again, that you can cite to his- I could cite to his case as the first. All right. Well, you've reserved three minutes for rebuttal, Mr. Bacharach. I don't think we really got to your procedural irregularities, but we may get to those later. We'll now hear from Ms. Pravda. Ms. Pravda. May it please the Court. Judge Pravda of the United States, I represented the government as sentencing below. The 100-month consecutive sentence in this case was substantively reasonable. It was substantively reasonable for a number of reasons. It was appropriate for Judge Koontz to run this sentence consecutive because it was entirely separate conduct, unrelated to the conduct in the terrorism case. It was appropriate for punishment for this defendant for his serious conduct in cutting the correctional officer. It was appropriate because it was specific deterrence for this defendant, not only for his actions here, but also to deter, as Judge Bianco said, the 100 other disciplinary incidents, which included other assaults on inmates, other assaults on correctional officers. It was appropriate because the Bureau of Prisons had found that the disciplinary measures that were imposed for those other violations were not sufficient to deter this defendant's ongoing conduct, and so it was appropriate for Judge Koontz to run that sentence consecutively for specific deterrence. It was also appropriate for general deterrence to deter other inmates from committing assaults on correctional officers because they might think that if their time is going to run concurrently to the time that they're sentenced to in other cases, or that they're already serving in other cases, then there's no harm to them. There's no additional sentence that's imposed with their action in going after correctional officers. I think that's understandable. I guess the argument with the most traction for Mr. Bachrach is that this defendant has what one could arguably call a diminished capacity because of mental illness that makes this conduct less bad because had he gotten mental health treatment, he may not have been as dangerous and may not have had as many infractions and may not have actually assaulted an officer. What's the response to that? But that argument was presented to Judge Koontz a sentencing. He considered that argument. He explicitly stated both in the sentencing hearing and in the memorandum and opinion that he issued afterwards that he took into account the defense arguments about the defendant's mental illness, the effect of the condition, the confinement on the mental illness, and he thought the 100-month sentence was appropriate. That was actually a bottom-of-the-guideline sentence. The guidelines are 97 to 121 months. It may be that he gave that bottom-of-the-guideline sentence specifically because he took those factors into account. What matters, the purposes of this appeal, is that he was aware of those factors. He considered them. We know he considered them because he explicitly said that. It's never been the direction from this court that a district judge has to explain the weight given to any particular 3553A factors or to an argument pursuant to those factors. What matters is the judge didn't commit procedural error. He considered all of the arguments presented by the defendant. He gave a sentence that was substantively reasonable, and in that scenario, that's the end of the situation. I'm happy to address, if the court has questions, any of the procedural reasonableness arguments, but otherwise I'll rest on the government's brief. Seeing no questions, thank you very much, Mr. Proctor. Is he back, Breck? You're back. I guess he'll be back again soon. In a few minutes. No, the only final point, because I realized that I hadn't mentioned just previously, is that appellant is not the only one that believed that a concurrent sentence was appropriate. Probation department also had recommended a concurrent sentence for the assault case. That's all. Unless there's any questions, then I'll get my notes out for the next one. All right, thank you. Thank you both.